IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TANIELLE THOMAS, for herself and all others similarly situated,<br>    Plaintiff,<br>  v.<br><br>WALMART, INC. and SAM'S WEST, INC. d/b/a SAM'S CLUB,<br>    Defendants. | Case No. 18-cv-4717 |

**JOINT MOTION AND INCORPORATED MEMORANDUM OF
LAW FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT
INCLUDING ATTORNEYS' FEES, COSTS AND SERVICE AWARDS**

Tanielle Thomas ("Named Plaintiff") and approximately 275 Opt-In Plaintiffs (the "Opt-In Plaintiffs") (collectively, "Plaintiffs") and Walmart Inc. and Sam's West Inc. d/b/a Sam's Club ("Defendants") (collectively, the "Parties"), through their undersigned counsel, jointly move the Court for an Order approving the settlement reached in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and analogous state law. The Parties have negotiated a settlement to resolve this *bona fide* dispute after years of litigation, the exchange of substantial discovery to inform the Parties' damage calculations and extensive, arm's-length negotiations conducted by counsel well-versed in wage-and-hour litigation.

The Parties submit that the terms of their proposed Settlement Agreement (the "Agreement") are fair, reasonable, and adequate, particularly in light of the existence of disputed issues of fact and law with respect to liability and damages, uncertainty as to whether each Plaintiff would obtain a judgment in his or her favor, along with the risks of trial and possible appeals. *See generally* Settlement Agreement (Exhibit 1).

1

### I. BACKGROUND

#### A. Procedural History

On November 1, 2018, Named Plaintiff filed a putative Collective/Class Action Complaint against Defendant, alleging violations of the FLSA and PMWA. *See* Complaint [Doc. 1]. Named Plaintiff alleged, and Defendants denied, that employee timeclocks were programmed to reject punches employees make more than 15 minutes before or after their scheduled shift start and end times and calculate employees' work time using their scheduled shift start and end times when the timeclock rejects a punch. *Id.* at ¶¶ 1, 10-12.

On December 19, 2019, the Court entered an Opinion granting conditional certification pursuant to 29 U.S.C. § 216(b), *see* Dec. 19, 2019 Opinion [Doc. 28], after which Named Plaintiff disseminated a Court-approved notice. In response to the Court-approved notice, approximately 275 individuals opted-in to this lawsuit by filing consent forms and did not subsequently withdraw their consent. *See* Opt-In Notices [Docs. 32-45, 47-54]. The Parties subsequently engaged in extensive written discovery on class merits and damages issues and deposed more than two dozen Plaintiffs and multiple Sam's Club Store Managers.

In October 2022, Plaintiff served a settlement demand on Defendants in advance of their settlement conference with Magistrate Judge David Strawbridge. *See* Declaration of David J. Cohen ("Cohen Dec."), ¶19 (Exhibit 2). Thereafter, the Parties engaged in a series of pre-settlement conferrals on damages calculations and issues that included the exchange of multiple demands and offers. *Id.* On November 4, 2022, the Parties participated in a full-day settlement conference conducted by Judge Strawbridge. *Id.* The Parties did not reach a negotiated settlement during this conference. *Id.* On November 9, 2022, at Judge Strawbridge's direction, the Parties provided supplemental submissions supporting their respective damage calculations and suggesting a settlement bracket for continued negotiations. *Id.* Judge Strawbridge continued to

oversee the Parties' continued settlement discussions during November and December 2022, which included the exchange of competing settlement proposals that included specific dollar values for damages, service awards, attorney's fees, and costs. *Id.* In January 2023, based on all the information available to him and in the exercise of his informed discretion, Judge Strawbridge made a mediator's settlement proposal of $500,000.00 that included specific dollar values assigned to Plaintiffs' damages and service awards, and to attorney's fees and costs. *Id.* The Parties ultimately accepted this proposal, finalized a memorandum of understanding commemorating the material terms of their agreement on January 31, 2023 and, thereafter, began drafting a settlement agreement. *Id.* The Parties now seek approval of that Agreement based on Judge Strawbridge's mediator's proposal.

### B. Legal Background

The FLSA requires employers to pay employees for all hours worked, including a "time-and-one-half" overtime premium for all hours worked over 40 in a workweek. *See* 29 U.S.C. §§ 206-207. The FLSA does not specifically define the term "work," *id.*, but the Department of Labor has promulgated regulations containing "Principles for Determination of Hours Worked" to inform this issue. *See* 29 C.F.R. §§ 785.11, 785.13. These principles state that any work an employer "suffers or permits" to be performed must be counted as hours worked when the employer "knows or has reason to believe" the work is being performed:

> **§ 785.11 General.**
> *Work not requested but suffered or permitted is work time*. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. *The employer knows or has reason to believe that he is continuing to work and the time is working time* (citations omitted).
>
> ....

3

> **§ 785.13 Duty of management.**
> *In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them.* The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

*See* 29 C.F.R. §§ 785.11, 785.13 (emphasis added). Named Plaintiff alleges Defendants violated the FLSA and its implementing Regulations because employee timeclocks did not accurately capture time Associates worked before and after their scheduled shift, so thus failed to provide overtime wages owed for all overtime work they performed. Defendants deny having violated the FLSA with respect to Plaintiffs. The Court has not decided the ultimate merit of Named Plaintiff's claims.

## II. THE PARTIES' PROPOSED SETTLEMENT

The Parties negotiated a gross settlement payment of $500,000.00 to resolve the claims pled, or that could have been pled, in the Complaint based on a mediator's proposal provided by this Court. As outlined in their Agreement, the Parties propose to distribute this sum as follows:

- $204,684.53 as damages paid to the 270 Plaintiffs *pro rata* based on the length of their employment term during the relevant period, with an average of approximately $758.00 per Plaintiff;

- $23,000.00 in Service Awards paid $8,500.00 to Named Plaintiff $3,500.00 to the Estate of Bryheem Barr, an early Opt-In Plaintiff, and $11,000.00 ($1,000.00 each) to the eleven deposed Plaintiffs;

- $32,315.47 to reimburse Class Counsel's "out-of-pocket" litigation costs, including all settlement administration costs; and

- $240,000.00 as attorneys' fees to Plaintiffs' Counsel, representing approximately 32% of their current total lodestar.

The $227,684.53 (damages plus service awards) allocated to the Plaintiffs represents a fair and reasonable result because of the uncertainty of determining whether Defendants violated the FLSA, including Defendants' maintenance of extensive computerized time records they believe

contradict Named Plaintiff's allegations of unpaid work, and in light of the significant risks, costs and delays associated with continuing the litigation through trial and any appeals the Parties might pursue. Further, the $204,684.53 the Parties propose to allocate as damages among the approximately 275 Plaintiffs represents 26% of Plaintiff's maximum-value damage calculation and 163% of Defendants' maximum-value damage calculation. *See* Cohen Dec. at ¶20 (Exhibit 2).

The Parties agree that the $240,000.00 Judge Strawbridge proposed be allocated as attorneys' fees is fair and reasonable, because this figure represents only 32% of the $738,940.00 lodestar Plaintiff's counsel have accumulated by dedicating 1,432.5 hours to their representation of Plaintiffs from October 2017 to present. *Id.* at ¶ 21.

By cashing their settlement checks, the Named Plaintiff and Service Award Plaintiffs will provide the Released Parties with a general release from all any and all claims, causes of action, and legal theories of relief, known or unknown, relating directly or indirectly to the allegations in this Action, from March 6, 2017 to the date of the Final Approval Order. *See* Agreement at § 5.1. By cashing their settlement checks, the Opt-In Plaintiffs will release and discharge the Released Parties from all any and all state or federal wage or pay-related claims, causes of action, and legal theories of relief, known or unknown, that were alleged, or could have been alleged, or otherwise raised in the Action, from March 6, 2017 to the date of the Final Approval Order (the "Released Claims"). *Id.* at § 5.3.

## III. STANDARD FOR FLSA SETTLEMENT APPROVAL

Because the Third Circuit has not yet weighed in on the issue of whether court approval of settlement agreements involving FLSA claims is required, some courts in this Circuit follow the FLSA approval process set forth by the Eleventh Circuit in *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *See O'Mara v. Creative Waste Sols., LLC,* 2020 WL 2513571, *3 (E.D. Pa. May 15, 2020). Applying this process, the Court must determine whether

the proposed settlement of Plaintiff's FLSA claims "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *See Mako v. Anastasia Care Servs., LLC*, 2020 WL 919731, *1 (E.D. Pa. Feb. 26, 2020); *Brown v. Progressions Behav. Health Servs., Inc.*, 2017 WL 2986300, *3 (E.D. Pa. July 13, 2017).

A proposed settlement resolves a *bona fide* dispute if its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Xu v. Gu,* 2022 WL 35605, *2 (E.D. Pa. Jan. 4, 2022). "In essence, for a *bona fide* dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the Defendants' intent to reject or actual rejection of that claim when it is presented." *Xu,* 2022 WL 35605 at *2.

"If the Court determines that the settlement concerns a '*bona fide* dispute,' it will conduct a two-part fairness inquiry to ensure: (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Hunter v. M-B Companies, Inc.,* 2020 WL 4059898, *2 (E.D. Pa. July 20, 2020).

## IV.   THE COURT SHOULD APPROVE THE PARTIES' PROPOSED SETTLEMENT

### A.  The Parties' Settlement Represents The Resolution Of A *Bona Fide* Dispute

Named Plaintiff believes and has averred that she and the other Plaintiffs performed more than *de minimis* overtime work that was not tracked by Defendants' timekeeping system, and for which they received no wages. *See* Plaintiff's Notice Memo, pp. 2-6 [Doc. 19]. Defendants deny Named Plaintiff's recitation of the record evidence and have compiled a factual record demonstrating that Named Plaintiff's work was accurately tracked and paid, and that many Plaintiffs routinely worked less than 40-hours per week, so are not owed any overtime wages. *See* Defendants' Notice Opp, pp. 2-5 [Doc. 20]. This dispute involves many hotly-contested issues, including: whether Defendants' timekeeping system is reliable; whether Defendants' timekeeping

system accurately captured Plaintiffs' pre- and post-shift work; whether Plaintiffs' claimed additional work is *de minimis,* or owed at a straight-time rate (and whether straight-time or "gap-time" is recoverable under the FLSA); whether Defendants retroactively noted and paid Plaintiffs for the extra work they claim; and whether Defendants had actual or constructive knowledge of the overtime work Plaintiffs claim. *Cf.* Plaintiff's Oct. 24 2022 Settlement Memo pp. 2-4 *with* Defendants' Oct. 24 2022 Settlement Memo pp. 3-6. The *bona fide* nature of the Parties' dispute is further demonstrated by the Parties' Settlement Agreement, in which the Parties acknowledge that Named Plaintiff alleges to have performed more than *de minimis* pre-shift work for Defendants' benefit without proper compensation, but that Defendants deny liability on this claim and deny owing damages to the Plaintiffs. Accordingly, the Parties' settlement clearly represents the resolution of a *bona fide* dispute.

### B.  The Settlement Is Fair and Reasonable

District courts in the Third Circuit typically consider the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975), as the basis for evaluating the fairness of a proposed class action settlement. *Xu,* 2022 WL 35605 at *4. The *Girsh* factors include: the complexity, expense, and likely duration of the litigation; the reaction of the class to the settlement; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the risks of maintaining the class action through the trial; the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id., citing Girsh*, 521 F.2d at 157–58. This Court should approve the Parties' proposed settlement because, as discussed below, all the *Girsh* factors either weigh in favor of approval or do not suggest the Parties' proposed settlement is unfair.

### 1. The settlement as a whole is fair and reasonable

Here, the settlement is fair and reasonable considering all the applicable factors. Defendants have agreed to pay a Gross Settlement Amount of $500,000.00. This settlement was negotiated with due consideration given to many issues, including: the complexity, expense, and uncertainties associated with proceeding to trial; the significant amount of time, effort, and money dedicated to the Parties' discovery efforts; the difficulty of proving damage calculations based on claimed off-the-clock work; whether Defendant's timekeeping records would ultimately be considered a reliable indicator of Plaintiffs' work time; and the value of the settlement fund in light of the best possible recovery. *See* Cohen Dec. at ¶22 (Exhibit 2).

This settlement is not the product of fraud or collusion. *Id*. at ¶23. The Parties negotiated this settlement across several months of arm's-length negotiations, involving the exchange of multiple demands and offers on both monetary and non-monetary terms, by capable attorneys with extensive experience in the litigation of class and collective wage and hour claims, including claims relating to claimed off-the-clock work. *Id.* Through these exchanges, and an intensive review of the underlying data, the Court was able to help the Parties narrow the gap between their positions and formulate a mediator's proposal that the Parties ultimately accepted. *Id.*

The amount of the settlement is reasonable in relation to the potential recovery. As in all wage-and-hour claims, particularly in the class and collective action context, the nature and value of recoverable damages can be uncertain. For example, Defendants' calculations in this case provided total damages (based on 1 unpaid overtime hour per week) as low as $125,290.73 across all Plaintiff and workweeks, while Plaintiff's damage calculations provided total damages (based on 6 unpaid overtime hours per week) as high as $770,400.00. *Id.* at ¶20. The settlement negotiated in this case is fair and reasonable because it not only establishes a fund benefitting Plaintiffs that provides between 26% and 163% of their unpaid wages, but also avoids the possibility that, after

a finding of liability in their favor, Plaintiffs might (because of the Parties' credibility, the quality of Defendants' timekeeping data, or any other reason) wind up with nothing or a judgment based on Defendants' damage calculation. *Id.* at ¶24. Finally, the proposed settlement provides an average payment of approximately $758.00 per Plaintiff which represents a substantial recovery for a highly-disputed claim. *Id.* at ¶25.

### 2. The proposed service awards are fair and reasonable

The Agreement also provides for a $23,000.00 in Service Awards to be paid to the Named Plaintiff ($8,500), the first Opt-In Plaintiff ($3,500) and eleven Plaintiffs who appeared for depositions ($1,000 each) in recognition of their service to the Class. Factors courts consider when analyzing incentive awards include: the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; and the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class. *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, *3 (E.D. Pa. June 4, 2014). *See Altnor*, 197 F. Supp. 3d at 771 ("the incentive award must be related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit") (internal quotations omitted), *citing Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 279 (E.D.N.Y.2009).

Named Plaintiff is entitled to a Service Award because she accepted financial and reputational risks by stepping forward to commence, join, and support this litigation. Named Plaintiff was directly and regularly involved in this litigation, performing tasks such as: producing documents to describe and confirm her claims, assisting with the review of case documents to inform litigation strategy, speaking with putative class members and encouraging their cooperation

and assistance in the prosecution of this case, reviewing pleadings for accuracy, providing declarations in support of motions, responding to written discovery requests, appearing for deposition, assisting in preparations for settlement negotiations, participating in the Parties' settlement conference, and reviewing the fairness of Defendants' settlement proposals. *See* Cohen Dec. at ¶26 (Exhibit 2). Accordingly, the Named Plaintiff's Service Award represents a fair and reasonable amount in consideration for her effort in this matter and is consistent with similar awards approved in this Circuit. *See Diaz v. BTG Int'l Inc.,* 2021 WL 2414580, *9 (E.D. Pa. June 14, 2021) (approving two $10,000 service awards); *Rose v. Travelers Home & Marine Ins. Co.*, 2020 WL 4059613, *11 (E.D. Pa. July 20, 2020) (approving $10,000 service award); *Layer v. Trinity Health Corp.*, 2019 U.S. Dist. LEXIS 185211, *3 (E.D. Pa. Oct. 23, 2019) (approving $10,000 service award); *Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, *10 (E.D. Pa. Aug. 26, 2019) (approving $10,000 service awards).

Bryheem Barr opted-in to this action on August 29 2019, at the same time Named Plaintiff moved for FLSA conditional certification. *See* Cohen Dec. at ¶27 (Exhibit 2). Mr. Barr claimed his work experience at two Sam's Club locations was similar to the Named Plaintiff's experience, providing important confirmation of Defendants' alleged common practices for conditional certification. *Id. See* Dec. 19, 2019 Opinion, pp. 4-7 [Doc. 27] (granting FLSA conditional certification). Mr. Barr also appeared for a brief deposition in this case. *Id.*

The remaining incentive awards are requested for Plaintiffs who answered Defendants' written discovery requests and appeared for a deposition during the discovery phase, providing information about their work, timekeeping practices, and claims that materially informed the Parties' settlement positions, informed the Court's mediator's proposal, and supported this negotiated resolution. *See* Cohen Dec. at ¶28 (Exhibit 2). These Service Awards are also fair and justified. *See McGee*, 2014 WL 2514582 at *3; *Altnor*, 197 F. Supp. 3d at 771.

10

### 3. The proposed attorney's fee is fair and reasonable

Judicial review of attorneys' fees is required "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Wahpoe v. Staffmore LLC,* 2020 WL 5554413, *4 (E.D. Pa. Sept. 16, 2020). *See In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, *4 (E.D. Pa. Mar. 7, 2014). Percentage-of-recovery is the prevailing method used by courts in the Third Circuit to assess attorneys' fees in wage-and-hour cases. *Devine v. Ne. Treatment Centers, Inc.,* 2021 WL 4803819, *7 (E.D. Pa. Oct. 14, 2021). The Third Circuit has set forth seven factors for evaluating the appropriateness of an attorneys' fee award under the percentage of recovery method: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by Plaintiff's counsel; and (7) the awards in similar cases. *Xu,* 2022 WL 35605 at *6 (E.D. Pa. Jan. 4, 2022). *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (n. 1) (3d Cir. 2000).[1]

Plaintiff asserts that the fee requested in this case is appropriate under the percentage of recovery method although Plaintiff's Counsel seek a fee award that lies above the typical range. The size of the fund created ($500,000.00) and the number of persons benefitted (approximately 275) are not unusually large, but Plaintiff's recovery is notable in that it represents an amount believed to represent between 26% and 163% of their provable damages (applying Plaintiff's and Defendants' assumptions, respectively). *See* Cohen Dec. at ¶24 (Exhibit 2). Although Plaintiff has

---

[1] Courts in this Circuit have held that "fee awards for common fund cases generally range from 20-45% of the fund." *See, e.g., Nwogwugwu v. Spring Meadows at Lansdale, Inc.,* 2017 WL 2215264, *3 (E.D. Pa. May 18, 2017); *Rubbo v. Peoplescout, Inc.,* 2017 WL 2010311, *3 (E.D. Pa. May 11, 2017); *Howard v. Philadelphia Hous. Auth.,* 197 F. Supp. 3d 773, 782 (E.D. Pa. 2016).

not yet informed the entire Collective, Plaintiff's Counsel have communicated the settlement terms to Named Plaintiff who, in turn, has disseminated this information to multiple Plaintiffs, none of whom have communicated any objection to the proposed settlement. *Id.* at ¶29. The absence of substantial objections by other Plaintiff supports the proposed distribution. The skill and efficiency of the attorneys involved in this action also supports the proposed distribution. As discussed at length above, the complexity and duration of this litigation both support the proposed distribution. That Plaintiff retained Counsel on a contingent basis to prosecute this action, such that Counsel would have recovered nothing from a losing effort, supports the proposed distribution. *Id.* at ¶18. The amount of time Plaintiff's Counsel devoted to this case – namely 1,432.5 hours from October 2017 to present, providing a lodestar valued at $738,940.00 – supports the proposed distribution. *Id.* at ¶¶7, 12, 21. Finally, based on their long experience, Plaintiff's Counsel submit that the fee proposed in this action is commensurate with, if not below, the fee awards typically approved in FLSA collective actions of similar complexity and duration. *Id.* at ¶¶10-13.

The Third Circuit suggests it is also "sensible" for district courts to "'cross-check' the percentage fee award against the 'lodestar' method." *Creed*, 2013 WL 5276109, at *6. "The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Even when used as a cross-check, courts should "explain how the application of a multiplier is justified by the facts of a particular case." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005), *quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 340 (3d Cir. 1998).

As of early April 2023, Plaintiff's Counsel had spent 1,432.5 hours on this matter which, billed at their typical and customary rates, provided a total lodestar of $738,940.00. *See* Cohen Dec. at ¶¶ 7, 12, 21 (Exhibit 2). This total reflects the amount of time Plaintiff's Counsel spent on

12

a wide array of tasks in this action, including: investigating and drafting the Complaint, preparing initial disclosures, drafting the Parties' Rule 26 report, negotiating and drafting multiple procedural and substantive stipulations, litigating Plaintiff's FLSA conditional certification motion and class notice issues, supervising the notice mailing and opt-in efforts and filings, conferring on and litigating class discovery issues, engaging in extensive class and merits discovery efforts (including taking and defending over two dozen depositions and reviewing thousands of pages of documents and data), participating in extensive settlement negotiations with defense counsel that included extensive damage calculations and confirmatory discovery, drafting and finalizing the Parties' Agreement and this approval submission. *Id.* at ¶8.

The $240,000.00 fee proposed in this action will provide Plaintiff's Counsel with a "negative multiplier" of 0.32, meaning they will recover only 32% of the value of the work they performed over the past six years. *Id.* at ¶21. Fee requests involving a negative multiplier are generally considered reasonable *per se. See In re Wawa, Inc. Data Sec. Litig.,* 2021 WL 3276148, at *13 (E.D. Pa. July 30, 2021); *Taha v. Bucks Cty. Pennsylvania*, 2020 WL 7024238, *8 (E.D. Pa. Nov. 30, 2020) ("Where this calculation results in a 'significant negative multiplier,' it will 'suggest that [the plaintiff's] fee request is reasonable'"); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 389 (E.D. Pa. 2019) ("negative multiplier suggests that Plaintiff's fee request is reasonable"); *Krimes v. JPMorgan Chase Bank, N.A.*, 2017 WL 2262998, at *10 (E.D. Pa. May 24, 2017).

### 4. The proposed cost recovery is fair and reasonable

Finally, this Settlement Agreement seeks $32,315.47 in costs. It is well-established that "[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action. *Caddick v. Tasty Baking Co.,* 2021 WL 4989587, *9 (E.D. Pa. Oct. 27, 2021), *citing Vista*

13

*Healthplan, Inc. v. Cephalon, Inc.,* 2020 WL 1922902, *32 (E.D. Pa. Apr. 21, 2020).

Plaintiff's Counsel have incurred $32,315.47 in costs relating to this lawsuit between October 2017 and the present on the types of items a paying client would expect to be charged in litigation of this nature. *See* Cohen Dec. at ¶15 (Exhibit 2). Plaintiff's Counsel paid these expenses on a contingent basis, risking their recovery on the outcome of this litigation, and have not received any cost payment or reimbursement of any sort throughout the duration of this case. Plaintiff's Counsel seek a full reimbursement of the costs paid out-of-pocket to support this litigation, including all amounts ultimately required to distribute the notice and provide the payments and tax services associated with this settlement, as is typically permitted in FLSA cases. *See, e.g., Caddick,* 2021 WL 4989587 at *9; *Morgan v. RCL Mgmt., LLC,* 2020 WL 3429444, *5 (E.D. Pa. June 23, 2020); *Stewart v. First Transit, Inc.,* 2019 WL 13043049, *3 (E.D. Pa. Dec. 30, 2019)

### C. The Agreement Furthers the FLSA's Implementation In The Workplace

"The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours." *Lynn's Food Stores, Inc*., 679 F.2d at 1352. Assuming judicial approval of this settlement is necessary, it ensures that the compromise "furthers implementation of the FLSA in the workplace." *See Mako v. Anastasia Care Servs., LLC,* 2020 WL 919731, *2 (E.D. Pa. Feb. 26, 2020); *Brown v. Progressions Behav. Health Servs., Inc*., 2017 WL 2986300, *3 (E.D. Pa. July 13, 2017). Courts generally find that fair and reasonable FLSA settlements promote the FLSA's purpose so long as they avoid restrictive confidentiality clauses and impermissibly broad release provisions. *See Mako, 2020 WL 919731 at *3* ("The agreement contains no confidentiality provision and the settlement is not sealed"); *Brown*, 2017 WL 2986300 at *3 (payments will be made to Class Members on a *pro rata* basis, no opt-outs or objections were submitted, suggesting no fear of retaliation, no confidentiality provision and the settlement is not sealed).

The Parties' proposed Settlement contains a narrowly-tailored confidentiality clause that does not include any sanction for violations. Settlement Agreement at §8 (Exhibit 1). *See Waltz*, 2017 WL 2907217, at *3 (finding narrowly tailored confidentiality clause did not frustrate purpose of FLSA where Defendants could not sanction Plaintiff for violating it). As a result, the "public-private character" of employee rights under the FLSA" is preserved, and the Agreement allows for the "public, including current, former, or potential employees of Defendant," to assure that employee wages are fair by virtue of public knowledge of the settlement. *Mabry*, 2015 WL 5025810, at *3. Further, the Settlement release clause is not impermissibly broad because it limits the scope of waiver and release provisions to claims "that were alleged, or could have been alleged" in the Complaint, preserving equal bargaining power between the Parties. *See Bettger v. Crossmark, Inc.*, 2015 WL 279754, *8 (M.D. Pa. Jan. 22, 2015). Finally, as favored in this context, the settlement payments will be distributed on a *pro rata* basis. *Brown*, 2017 WL 2986300 at *3. Accordingly, the proposed settlement will adequately further the implementation of the FLSA, so merits this Court's approval.

## V. CONCLUSION

For the reasons set forth above, the Parties respectfully ask the Court to enter their proposed Order granting the instant Motion and approving their proposed settlement in its entirety.

Respectfully submitted,

| | |
|---|---|
| */s/ David J. Cohen* | */s/ James N. Boudreau* |
| David J. Cohen, Esquire | James N. Boudreau, Esquire |
| STEPHAN ZOURAS LLP | GREENBERG TRAURIG LLP |
| 604 Spruce Street | 1717 Arch Street, Suite 400 |
| Philadelphia, PA 19106 | Philadelphia, PA 19103 |
| | |
| *Counsel for Plaintiff and the Collective* | *Counsel for Defendants* |
| | |
| Dated: April 24, 2023 | Dated: April 24, 2023 |